IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HUGO BUITRON, et al.,** * | |
| * | |
| *Plaintiffs,* | |
| v. | |
| * | Civil Case No: 1:23-cv-01078-JMC |
| **TRACTOR SUPPLY COMPANY,** | |
| * | |
| *Defendant/Third-Party Plaintiff,* | |
| v. * | |
| **JUSTIN ISEMINGER**, | |
| * | |
| *Third-Party Defendant.* | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Hugo Buitron and Patricia Cajas Flores, filed this lawsuit against Defendant, Tractor Supply Company ("TSC"), in the Circuit Court for Washington County on January 17, 2023, alleging vicarious liability for negligence (Count I), negligent entrustment (Count II), negligent hiring, retention, and supervision (Count III), and loss of consortium (Count IV). (ECF No. 3). TSC removed the case to this Court on April 21, 2023, before filing a third-party complaint against Spherion Staffing, LLC ("Spherion") and Justin Iseminger. (ECF Nos. 1, 23, 24). TSC then voluntarily dismissed its claims against Spherion on November 9, 2023. (ECF Nos. 25, 26). Presently before the Court is TSC's Motion for Summary Judgment. (ECF No. 30). The Court has considered the motion as well as Plaintiffs' reply and TSC's response thereto. (ECF Nos. 37, 41). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, TSC's motion will be granted in part and denied in part.

I. BACKGROUND

TSC is a retail corporation that sells products for home improvement, agriculture, lawn and garden maintenance, livestock, equine and pet care for recreational farmers and ranchers, pet owners, and landowners. Plaintiff Buitron was employed as a freight handler in TSC's Hagerstown, Maryland, distribution center warehouse at all times relevant to this lawsuit. (ECF No. 30-1 at 1; ECF No. 37-1 at 1).[1] Specifically, Mr. Buitron worked for Capstone Logistics, LLC ("Capstone"), a third-party company that employed individuals to work at the TSC distribution center. (ECF No. 30-1 at 1; ECF No. 37-1 at 3). Mr. Iseminger worked for Spherion, another third-party company that employed individuals to work at the TSC distribution center. (ECF No. 30-1 at 1–3; ECF No. 37 at 2). Plaintiff Flores is the wife of Plaintiff Buitron. (ECF No. 3 at 7).

Plaintiffs' Complaint alleges that, on or about January 17, 2020, Mr. Iseminger negligently operated a pallet jack in the TSC distribution center by pinning Mr. Buitron's left foot "between the pallet he was working on and the pallets driven by [Mr. Iseminger] causing painful and permanent injuries and other damages." (ECF No. 3 at 2). Plaintiffs attribute Mr. Iseminger's conduct to TSC and accordingly filed the present lawsuit sounding in negligence and loss of consortium.

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v.*

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

*S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.  ANALYSIS

#### A.  A Genuine Dispute Exists Regarding Whether TSC is Entitled to Workers' Compensation Immunity

TSC first argues that it is "entitled to judgment as a matter of law as to all claims because it enjoys statutory workers' compensation immunity as Plaintiff Buitron's 'dual employer.'" (ECF No. 30-1 at 7).  "[U]nder [Maryland's] Workers' Compensation Act ["MWCA"] an employer is generally required to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is at fault for the injury." *Ledford v. Jenway Contracting, Inc.*, 259 Md. App. 534, 543 (2023) (internal quotation

omitted).[2] "In exchange, the Workers' Compensation Act provides a substitute for the employer's common law liability for negligence, subject to his common law defenses, and creates an absolute, but limited, liability regardless of fault, such liability upon a conforming employer being exclusive." *Id.* at 543–44 (internal quotation omitted). Specifically, the MWCA explains that "Except as otherwise provided in this title, the liability of an employer under this title is exclusive" and that "the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person." Md. Code Ann., Lab. & Empl. § 9-509(a)–(b); *see also id.* §§ 9-509(c)–(d) (noting exceptions). "The rationale behind the exclusivity rule is that 'the employer has undertaken the burden of supplying workmen's compensation insurance in return for immunity from suit." *Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 428 Md. 1, 38 (2012) (quoting *Hauch v. Connor*, 295 Md. 120, 127 (1983)). The MWCA "recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of caring for the helpless human wreckage found [along] the trail of modern industry," thus "reflect[ing] a compromise between employees' rights to pursue common law and other statutory damages for their injuries, and the burden to employers of having to provide workers' compensation benefits." *Id.* The Court must therefore construe the MWCA "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purpose." *Marks-Sloan*, 428 Md. at 20. "On the other hand, the Workers' Compensation Act does not prevent 'covered employees' from maintaining an

---

[2] "Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit." *Havtech, LLC v. AAON Inc.*, No. SAG-22-00453, 2022 WL 1213476, at *4 (D. Md. Apr. 25, 2022). Regarding tort claims under Maryland's choice of law rules, "the substantive tort law of the state where the wrong occurs governs." *Haunch v. Connor*, 295 Md. 120, 123 (1983). Thus, the Court applies the substantive tort law of Maryland because the material events giving rise to the Complaint and third-party complaint occurred in Maryland.

4

action against a culpable third-party tortfeasor." *Mitchell v. Rite Aid of Md., Inc.*, 257 Md. App. 273, 302 (2023).

It is undisputed that Plaintiff Buitron did, in fact, receive workers' compensation benefits stemming from his January 17, 2020, alleged injuries. *See* (ECF No. 30-10 at 4). The inquiry relevant to TSC's first argument is thus whether the Court may conclude that, in addition to being employed by Capstone, TSC also should be considered an employer of Plaintiff Buitron as a matter of law. Although both parties acknowledge that Capstone hired Plaintiff Buitron, it is "not a novel concept in Maryland law" that "an employee can concurrently serve two employers." *Mitchell*, 257 Md. App. at 303–04. TSC refers to this concept as the "dual employer" doctrine. (ECF No. 30-1 at 7).

In deciding whether TSC can be considered an "employer" for purposes of workers compensation immunity, the Court relies on the criteria set forth in *Whitehead v. Safway Steel Products, Inc.*:

> [Maryland courts] ha[ve] traditionally considered five criteria in determining whether or not an employer/employee relationship exists between two parties. These criteria . . . include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer.

304 Md. 67, 77–78 (1985). Of those five factors, "the factor of control stands out as the most important" and "whether the employer 'has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done' is the 'decisive,' or 'controlling' test." *Id.* at 78 (first citing *Mackall v. Zayre Corp.*, 293 Md. 221, 230 (1982), then citing *L. & S. Constr. Co. v. State Accident Fund*, 221 Md. 51, 57 (1959)); *see also Mitchell*, 257 Md. App. at 304 ("Although all five factors are considered, Maryland law is clear that the factor of control stands out as the most important."). "Ordinarily, the existence of the employer/employee

5

relationship is a question reserved for the fact finder." *Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio*, 346 Md. 573, 590 (1997). "When, however, the existence of the relationship is undisputed, or the evidence on the issue is uncontroverted, unless conflicting inferences can be drawn from that evidence, the trial court is entitled to treat the matter as a question of law." *Id.* In the context of the "dual employer" doctrine, the above factors must be analyzed as to each employer. *See, e.g., Mackall*, 293 Md. at 230.

In determining whether dual employment can be decided as a matter of law, a number of Maryland cases are analogous to the instant case and therefore instructive. In *Mackall*, the plaintiff/appellant was an employee of a "wigs and millinery" concession stand owned by Alden Millinery within a department store owned and operated by Zayre Corporation. *Id.* at 222–23. The employee slipped and fell on a liquid on the floor of an aisle before filing a claim for workmen's compensation against Alden and separately suing Zayre for negligence. *Id.* at 223. Like TSC in the instant case, Zayre moved for summary judgment arguing that it was a dual employer of the plaintiff such that suit was precluded under the MWCA, but that motion was denied and the case proceeded to a bifurcated trial: one trial on the issue of the plaintiff's employment status as to Zayre, and one trial on the issue of negligence and damages. *Id.* at 224. The following evidence was adduced at the first trial, leading to a jury determination that the plaintiff was the dual employee of both Alden and Zayre: both Alden and Zayre participated in the selection and hiring of the plaintiff; both Alden and Zayre participated in the payment of the plaintiff's wages; both had the power to discharge the plaintiff; the retail sale of wigs and millinery was a part of the regular business of both entities; and "there was evidence to show that both exercised control over [the plaintiff] in the performance of her duties." *Id.* at 230. The plaintiff appealed that jury determination on the ground that "the trial court erred in instructing the jury that

6

an individual simultaneously may be the employee of two employers." *Id.* at 229.  The Maryland Supreme Court affirmed the trial court's instructions after citing several Maryland cases in which courts found persons to be employees of two employers, and concluded by noting that "If there is evidence to support an inference that more than one individual or company controls or directs a person in the performance of a given function, the question whether an employer-employee relationship exists is a question of fact to be determined by the jury." *Id.* at 230.  Thus, in the specific procedural context of a plaintiff trying to keep the "dual employer" doctrine determination from a jury, that issue is properly reserved for a factfinder where a reasonable factfinder could conclude that dual employment exists.

The Maryland Supreme Court in *Whitehead* was presented with the very issue before the Court in the instant case, albeit in a different procedural posture—"whether a person who is employed by a temporary services agency is also an employee of the company to which the worker is provisionally assigned." *Whitehead*, 304 Md. at 70.  There, the plaintiff worker challenged the trial court's decision to grant judgment notwithstanding the verdict after the jury determined that the plaintiff was *not* an employee of the purported dual employer and the latter could be sued for negligence without the protection of the workers' compensation bar. *Id.* at 71.  Although the court again noted that "whether a worker was acting as a servant frequently . . . [is] a question of fact for the jury," it nevertheless affirmed the trial court's decision because there was no dispute that the purported dual employer exercised substantial control over the plaintiff and, notably, "control over the details of the work, was conceded from the outset by [the plaintiff]." *Id.* at 73, 84.  However, the court cautioned that "control over details as to what work is to be done and the way in which it is to be done . . ., will not of itself cause the employee [of a temporary services agency] to become the servant of the person to whom he is sent." *Id.* at 81.

Eventually came *Tyson Farms, Inc. v. Uninsured Employers' Fund*, which analyzed whether an individual working on a chicken farm owned by Dai Nguyen but with chickens owned and "managed" by Tyson Farms was a dual employee of both for purposes of workers' compensation, but again in a different procedural context from the instant case. 471 Md. 386, 390. There, an injured worker filed a claim with the Workers' Compensation Commission against Nguyen regarding her injuries. *Id*. Nguyen however was uninsured, such that the Uninsured Employers Fund entered as a plaintiff and brought in Tyson Farms (which was self-insured for workers' compensation claims) as an alleged additional employer of the plaintiff worker. *Id*. Unlike TSC in the present case, Tyson Farms argued *against* being deemed a dual employer so as to avoid workers' compensation liability. When the Commission determined that both Nguyen and Tyson Farms were dual employers, Tyson Farms appealed to the circuit court. *Id*. Following a two-day jury trial, both parties moved for judgment on the dual employer issue, with Tyson Farms arguing that the only reasonable conclusion to be drawn from the evidence was that it was not a joint employer. *Id.* at 400. The trial court denied both motions and instead let the issue go to the jury, which determined that Tyson Farms was not a co-employer at the time of the plaintiff's injuries before the case was then remanded back to the Commission.

On appeal, "a majority panel of the Court of Special Appeals[3] reversed the circuit court's judgment." *Id.* at 401–02. The Court of Special Appeals held that the evidence did not support a reasonable inference that only Nyguyen—and not Tyson Farms—employed the plaintiff given Tyson Farms' "extensive involvement in, and control over, [plaintiff's] day-to-day operation of the

---

[3] "In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022." *Heward v. Bd. of Educ. of Anne Arundel Cnty.*, No. 1:23-CV-00195-ELH, 2023 WL 6381498, at *26 n.26 (D. Md. Sept. 29, 2023).

farm." *Id.* at 403. Tyson Farms then appealed to the Maryland Supreme Court, arguing that (1) the court erred in not allowing the jury to resolve conflicting facts and inferences regarding whether the plaintiff was Tyson Farms' employee; and (2) the court erred in concluding that no reasonable jury could find that the appellant was *not* Tyson Farms' employee. *Id.* at 404. The Maryland Supreme Court agreed with Tyson Farms and reversed upon finding that "there was sufficient evidence from which a reasonably jury could find—as it did—that Tyson was not a co-employer of [the plaintiff]." *Id.* at 417. Moreover, the "Court of Special Appeals erred in deciding the factor of control as a matter of law where the evidence of control of the worker in this case was susceptible to two equally reasonable inferences, that Tyson was or was not a co-employer of [the plaintiff], and other factors—such as the selection and hiring of [the plaintiff], payment of wages, and the ability to fire [the plaintiff]—weighed in favor of finding that Tyson was not [the plaintiff's] co-employer." *Id.* at 418. And although Maryland courts place heavy emphasis on the control factor, "Recognizing that case law provides that control is the decisive factor in determining an employer-employee relationship does not affect the circumstance that there were differing reasonable inferences that could be drawn from the facts in this case as to whether Tyson controlled [the plaintiff's] conduct to the point that Tyson could be considered [the plaintiff's] co-employer." *Id.* at 419. The court thus clarified that even where a purported dual employer exercises some control over an individual, the factor of control is not necessarily dispositive; rather, a court must be confident that the purported dual employer exercised a certain, sufficient amount of control over the individual for it to become the "decisive factor."

The most analogous case to the one *sub judice*—both factually and procedurally—is *Mitchell*. In *Mitchell*, the plaintiffs were also employed by Capstone "as temporary laborers" at a facility leased and operated by Rite Aid of Maryland, Inc. 257 Md. App. at 281. After a tragic

9

mass shooting occurred at the Rite Aid facility, the plaintiffs filed suit against Rite Aid for negligently failing to provide adequate security and for negligent hiring and supervision of the assailant employee. *Id.* at 282. Rite Aid moved for summary judgment on the ground that it was the plaintiffs' dual employer as a matter of law and their claims were barred under the MWCA, just as TSC has done here. *Id.* at 292. The plaintiffs opposed the motion by insisting that they were solely employees of Capstone, "which set its employee's schedules, required employees to wear distinctive orange vests unlike other warehouse workers, did not require employees to attend morning meetings facilitated by Rite Aid, trained employees to use a specific method of breaking down a truck, and gave employees the freedom to choose to ignore or perform suggestions made by Rite Aid management." *Id.* at 293. The circuit court disagreed by granting Rite Aid's motion for summary judgment and subsequently denying the plaintiffs' motion for reconsideration. *Id.* at 297.

The Appellate Court of Maryland then reversed the circuit court's grant of summary judgment.[4] Just as in *Mackall* and *Tyson Farms*, the court determined that summary judgment was inappropriate because there was evidence from which a reasonable jury could conclude that Rite Aid was not the plaintiffs' employer. *Id.* at 314. In doing so, the court acknowledged that, in the specific procedural context of an employer moving for summary judgment on the ground that the employer *should* be considered a dual employer for purposes of workers' compensation immunity, such a motion is properly denied where a reasonable inference may be made that either (1) the initial or temporary services agency employer is the *only* employer, or (2) the subsequent entity involved with the individual's work is *not* their employer. *See id.* at 311 ("In the present case, as in *Tyson Farms*, we remain mindful of the procedural posture of the [plaintiffs'] action against

---

[4] The Supreme Court of Maryland denied review of the Appellate Court of Maryland's decision in *Mitchell*. *Mitchell v. Rite Aid of Maryland, Inc.*, 483 Md. 579 (2023).

10

Rite Aid . . . Of course, unlike in *Tyson Farms*, our current task is to determine whether the question of Rite Aid's status as an employer was improperly *kept from*, rather than submitted to, a jury due to the circuit court's grant of summary judgment. Yet, the point remains the same: if the evidence would support a reasonable inference that Rite Aid was *not* the [plaintiffs'] employer, then the issue should have been determined by a jury.") (emphasis in original).

The Appellate Court of Maryland then explained that "the prospect that Rite Aid maintained ultimate control over its facility and directed Capstone's supervisors on the services to be provided is not necessarily inconsistent with the possibility that the [plaintiffs] remained employees of an independent contractor free from Rite Aid's control, except as to the final product of their work." *Id.* at 283–84. And although portions of the parties' agreement(s) supported the position that Rite Aid maintained ultimate control over the plaintiffs, it also contained provisions supporting the notion that the plaintiffs were solely employees of an independent contractor. *Id.* at 311–12. For instance, the parties' agreement(s) indicated that Rite Aid retained the discretion to remove Capstone employees from its facilities without notice and to require Capstone to remove unsatisfactory employees from its roster of employees working at Rite Aid facilities. *Id.* But there were also provisions indicating that the agreement(s) should not be construed as implying that employees of either party were employees of the other party for any purpose, and that Capstone conducted the plaintiffs' background investigations, was responsible for the decision-making process regarding Capstone employees, and supplied Capstone employees with unique clothing that all Capstone employees were required to wear while on site. *Id.* And while Capstone "was required to purchase and maintain such insurance as will protect [Capstone] employees and Rite Aid from claims under workers' or workmen's compensation, the workers' compensation policy was explicitly excluded from the requirement to identify Rite Aid 'as an Additional Insured.'" *Id.*

11

at 312. The court also drew a distinction between Rite Aid's ability to maintain control of its facility and ability to maintain control of the plaintiffs during the performance of their work in holding that a genuine dispute of material fact existed to preclude summary judgment. Specifically, the court explained that, "we agree with Rite Aid that it maintained ultimate control over its facility and . . . directed Capstone's supervisors on the services to be provided. Yet, that conclusion is not necessarily inconsistent with the prospect that the [plaintiffs] were employees of an independent contractor free from Rite Aid's control in all details connected with the performance of the work except as to its product or result." *Id.* at 313 (internal quotation omitted). The court took particular notice of the "deposition testimony suggest[ing] that Capstone workers were primarily managed by their own supervisors and would unload Rite Aid's trucks according to their own operating procedures." *Id.*

Here, there exists a genuine dispute of fact as to whether TSC employed Plaintiff Buitron for purposes of workers' compensation immunity. Under the court's guidance in *Mitchell*, a reasonable jury could infer that either (1) Capstone was Plaintiff Buitron's *sole* employer, or (2) TSC was not Plaintiff Buitron's employer. TSC has undoubtedly presented evidence in support of its position that it employed Plaintiff Buitron. For instance, the parties' contract[5] indicates that Capstone and Capstone's personnel shall comply with TSC's site, safety, and security regulations; that TSC may request at any time that any or all Capstone employees be removed from the distribution center for unsatisfactory job performance; that Capstone employes were to adhere to TSC's standards regarding the unloading of pallets; and that TSC required Capstone to specifically

---

[5] The contract submitted in connection with TSC's motion indicates that it is between TSC and "Best Loading Service, Inc." (ECF No 30-6 at 1). TSC clarifies in the Affidavit of Jason Keen, who was employed by TSC at all times relevant to this lawsuit, that Capstone is the successor to Best Loading Service, Inc. (ECF No. 30-7 at 1). Plaintiffs also note this in their opposition to TSC's motion. *See* (ECF No. 37-1 at 5 n.2).

name TSC as an "Alternate Employer" for purposes of workers' compensation liability.  (ECF No. 30-6 at 3, 6, 10, 12).[6]  Further, TSC asserts that it had the right to control Plaintiff Buitron's work because of its pallet unloading standards, because TSC "trained him on warehouse safety and warehouse operations," and because "there was no Capstone supervisors present during Plaintiff Buitron's shifts, including the shift on January 17, 2020, when the incident occurred."  (ECF No. 30-1 at 9–10).  Ms. Mary Beth Lowry, TSC's corporate designee, likewise testified in her deposition that TSC controlled the manner in which Plaintiff Buitron performed his services.  (ECF No. 30-3 at 18–19).

      But, viewing the record in the light most favorable to Plaintiffs, there is also evidence suggesting that TSC was not Plaintiff Buitron's employer and/or that TSC did not exercise sufficient control over Plaintiff Buitron in order to classify it as Plaintiff Buitron's employer as a matter of law.  For instance, despite the above provisions in the parties' service agreement, the service agreement nevertheless states that Capstone "is an independent contractor for all purposes," and that "Neither [Capstone] nor its employees, agents or subcontractors . . . are entitled to any employee benefits of TSC."  (ECF No. 30-6 at 3).  Ms. Lowry also testified on TSC's behalf that Capstone, rather than TSC, hired Plaintiff Buitron, paid Plaintiff Buitron's wages, had the authority to fire/discipline Plaintiff Buitron, and agreed that the service agreement correctly represented that Capstone and its employees are independent contractors.  (ECF No. 37-2 at 13). Regarding the ability to control Plaintiff Buitron's work, Plaintiff Buitron asserted in his deposition that TSC managers were unable to direct Capstone employees to complete tasks and that Plaintiff Buitron stacked boxes in the distribution center in accordance with the way Capstone told him to.

---

[6] TSC further provided a copy of Capstone's Workers Compensation and Employers Liability Insurance Policy, which incorporates by reference the parties' service agreement, *i.e.*, which suggests that Capstone did, in fact, name TSC as an alternate employer for purposes of workers' compensation liability.  (ECF No. 30-9 at 4–5).

13

(Ex. 2 to Pls.' Opp'n to Def.'s Mot. For Summ. J., Dep. of Hugo Buitron at 31–36). Matt Wargny, another Capstone employee working at the TSC distribution warehouse, similarly contended that he was assigned work by his Capstone site manager and that TSC had the authority only to recommend disciplinary action regarding a Capstone employee's purported deficient job performance, but that TSC otherwise had no authority to control Capstone employees' work or discipline them. (ECF No. 37-4 at 7–8). Ms. Lowry likewise conceded that Capstone supervisors may have also directed Plaintiff Buitron's work. (ECF No. 37-2 at 13).

TSC is correct that this case is distinguishable from *Mitchell* on certain grounds. For example, the court in *Mitchell* noted that there was no requirement in the parties' contract that Capstone's workers' compensation insurance needed to identify Rite Aid as an additional insured, whereas TSC's contract with Capstone here included such a requirement. But there nevertheless exists sufficient evidence from which a reasonably jury could infer that either (1) *only* Capstone employed Plaintiff Buitron, (2) TSC did not employ Plaintiff Buitron, or (3) even if TSC exercised some degree of control over Plaintiff Buitron, that level of control is insufficient to definitively establish an employment relationship, particularly in light of the facts that Capstone—rather than TSC—hired Plaintiff Buitron, paid his wages, and had the authority to fire/discipline him. *Tyson Farms*, 471 Md. at 418. Accordingly, the Court finds that TSC is not entitled to workers' compensation immunity as a matter of law and TSC's motion for summary judgment is denied on this ground.

B. <u>TSC is Entitled to Summary Judgment on Plaintiffs' Negligent Entrustment (Count II) and Negligent Hiring, Retention, and Supervision (Count III) Claims, but Not Plaintiffs' Vicarious Liability Negligence (Count I) or Loss of Consortium (Count IV) Claims</u>

TSC next argues that, assuming *arguendo* it is not Plaintiff Buitron's dual employer, TSC is nevertheless entitled to summary judgment on Plaintiffs' negligent entrustment (Count II) and negligent hiring, retention, and supervision claims (Count III) because TSC did not employ Mr. Iseminger. (ECF No. 30-1 at 10). TSC dubs this argument as a classic "Catch-22" for Plaintiffs because arguing that Plaintiff Buitron was not employed by TSC would also suggest that Mr. Iseminger was not employed by TSC given that they were both employed by third-party companies and assigned to TSC's distribution center. *Id.* at 10–11. According to TSC, "either TSC exercised control over its temporary distribution center workers, in which case Plaintiff's claims are barred by workers' compensation immunity, or TSC exercised no control over its temporary workers, in which case it has no liability for the actions or omissions of Justin Iseminger, who was not a TSC employee at the time of the incident." *Id.* at 11. Aside from the issue of employment status, TSC also argues that "The record is devoid of any evidence relating to incompetence and TSC's actual or constructive knowledge of same." *Id.* at 12.

"Plaintiffs concede that insufficient facts were developed in discovery to maintain the claims of negligent hiring, retention, supervision, and entrustment by TSC of Mr. Iseminger." (ECF No. 37-1 at 15). The Court therefore grants TSC's motion for summary judgment to the extent that Plaintiffs cannot, as a matter of law, establish that TSC negligently entrusted Mr. Iseminger with the pallet jack or that TSC negligently hired, retained, and/or supervised Mr. Iseminger. Namely, summary judgment is granted in favor of TSC with regards to Counts II and III, leaving only Plaintiffs' claims for *respondeat superior* negligence (Count I) and loss of consortium (Count IV) remaining.

The Court must then analyze whether there is sufficient evidence in the record from which a reasonable jury could infer that TSC employed Mr. Iseminger. TSC's argument that the Court must definitively conclude that either both or neither Plaintiff Buitron and Mr. Iseminger were TSC employees is unpersuasive. First, TSC's "Catch-22" argument undercuts itself because it faults Plaintiffs for alleging that TSC did not employ Plaintiff Buitron but did employ Mr. Iseminger while arguing inversely that TSC employed Plaintiff Buitron for purposes of workers' compensation immunity but did not employ Mr. Iseminger for purposes of vicarious liability. But more notably, there exist crucial differences between the contexts in which both individuals were placed at the TSC facility and the level of control exercised over both individuals by TSC. Regarding the contexts in which both individuals were assigned to TSC's facility, Spherion's employment agreement with TSC consistently refers to Spherion employees assigned to provide temporary services to TSC as temporary employees of TSC whereas the agreement between Capstone and TSC contains the provision that Capstone employees working in TSC distribution centers are independent contractors. (ECF No. 23-1; ECF No. 30-6). Regarding the level of control exercised over both individuals by TSC, the evidence thus far indicates that *only* TSC exercised control over Mr. Iseminger rather than both TSC and Spherion concurrently exercising control over Mr. Iseminger. Although TSC contends that Spherion was Mr. Iseminger's sole employer, Ms. Lowry testified on TSC's behalf that Mr. Iseminger was subjected to the same training and supervision as other TSC employees and that Spherion never trained Mr. Iseminger to work at the TSC facility nor supervised Mr. Iseminger's work, assigned Mr. Iseminger specific tasks, or directed Mr. Iseminger's work. (ECF No. 37-2 at 9–10). Rather, Ms. Lowry testified that TSC supervisors could assign Mr. Iseminger work, reassign him, and direct the way that Mr. Iseminger completed his work. (ECF No. 37-2 at 9). In fact, Ms. Lowry stated in her deposition

that TSC did, in fact, control Mr. Iseminger's work at the TSC facility, and agreed that Spherion did *not* control Mr. Iseminger's work in any way when he was at TSC's facility. (ECF No. 37-2 at 9–10). A reasonably jury could therefore conclude that TSC employed Mr. Iseminger at the time of Mr. Iseminger's alleged negligence, either in tandem with Spherion or even as Mr. Iseminger's sole employer if the jury found the factor of control particularly persuasive.[7]

## IV.  CONCLUSION

For the foregoing reasons, it is this 15th day of March, 2024, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant Tractor Supply Company's Motion for Summary Judgment (ECF No. 30) is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's motion is granted to the extent that there is no genuine dispute of material fact that Plaintiffs', Hugo Buitron and Patricia Cajas Flores, claims for negligent entrustment (Count II) and negligent hiring, retention, and supervision (Count III) are insufficient as a matter of law and are therefore dismissed. However, Defendant's motion is denied to the extent that there exists a genuine dispute of material fact as to whether Defendant employed Plaintiff Buitron and/or Justin Iseminger in support of Plaintiffs' claims for *respondeat superior* negligence (Count I) and loss or consortium (Count IV); and

2. The parties shall confer and jointly inform the Court by March 29, 2024, whether they wish to participate in a settlement conference before embarking on discovery regarding TSC's third-party complaint. Should the parties wish not to participate in such a

---

[7] Although Plaintiffs cite other employees' impressions of whether TSC employed Mr. Iseminger as persuasive on this point, Maryland courts have held that "the parties' subjective belief as to whether an employment relationship exists is not dispositive of the legal question of whether one is the employer of another, except as such belief indicates an assumption of control by one and the submission to control by the other." *Injured Workers' Ins. Fund v. Orient Exp. Delivery Serv., Inc.*, 190 Md. App. 438, 459 (2010) (internal quotation omitted); *see also* (ECF No. 37-1 at 5). And to be clear, there is also evidence in the record supporting the inference that Spherion concurrently employed Mr. Iseminger, including Spherion's ability to hire, discipline, and pay Mr. Iseminger. *See, e.g.*, (ECF No. 37-2 at 7).

conference, the parties shall inform the Court as much by that same date and jointly propose a scheduling order governing the third-party complaint discovery.[8]


Date: <u>March 15, 2024</u>                                                                                               /s/
                                                                                            J. Mark Coulson
United States Magistrate Judge

---

[8] For clarity, TSC submitted correspondence via the Court's electronic filing system on February 16, 2024, regarding Mr. Iseminger's then-lack of involvement in this case. (ECF Nos. 35, 40). Mr. Iseminger then, through counsel, filed his answer to the third-party complaint on March 4, 2024. (ECF No. 44). The Court convened a conference call on March 5, 2024, to discuss the issues raised in the prior correspondence, especially in light of Mr. Iseminger filing his answer. (ECF No. 45). The parties then agreed at that conference that the Court would address TSC's pending motion for summary judgment before addressing a schedule for third-party discovery in the event that TSC's motion was denied. *Id.*